In the Interest of N.D., A child under seventeen years of age.

T.N., Appellant,

v.

Phelps County Juvenile Office, Respondent.

No. 25171.

Missouri Court of Appeals, Southern District, Division One.

Oct. 9, 2003.

Petition for Rehearing and Transfer Denied
Oct. 31, 2003.

Application for Transfer Denied
Dec. 23, 2003.

Appeal from the Circuit Court of Phelps County Juvenile Division, Ralph J. Haslag, Judge, Mary W. Sheffield, Judge.[1]

Appellant files pro se, attorney for appellant.

No brief filed by respondent.

James K. Prewitt, Judge.

This appeal involves the placement of N.D. ("Child") into the protective and legal custody of the Phelps County Division of Family Services ("DFS") upon the juvenile court's finding that her parents are "unfit, unable or unwilling to be [her] custodian." Although Child's father, P.N., ("Father") has filed a separate appeal, the appeal before us is a *pro se* appeal brought by T.N. ("Grandfather"), Child's paternal grandfather, who indicates on his notice of appeal that "[t]his appeal is taken on [Child's] behalf pursuant to Section 211.261[,] RSMo." Child's mother, R.D., ("Mother") has not filed an appeal.[2]

The only issue addressed in this opinion is related to Grandfather's contention that he may, in addition to bringing this appeal on behalf of Child, appeal on his own behalf. All other issues raised in his appeal are addressed in a separate order and memorandum opinion, which affirms the actions and judgment of the juvenile court in compliance with Rules 84.16(b)(2) and (5). For that separate opinion, the parties have been furnished with a memorandum, for their information only, that sets forth the reason for the order.

### FACTS

Mother and Father are not married and live apart from each other. Prior to the proceedings at issue, Child was living with Mother, and never had lived with Father.

Child was born October 10, 2001, at Barnes–Jewish Hospital in St. Louis. At

---

1. As is explained in the description of the facts, Judge Haslag was originally assigned the case and he served as the judge of record during initial proceedings, but later recused himself pursuant to a request for change of judge. Judge Sheffield was then assigned the case and she served as the judge of record for the remainder of the proceedings.

2. The respondent, the Phelps County Juvenile Office, has not filed a brief in this case.

that time, both Mother and Child tested positive for benzodiazepine. This information was reported to Stacy Johns, a caseworker at DFS, in a referral from a newborn crisis assessment by the hospital. Upon her investigation into the care of Child, Ms. Johns determined that Mother was in need of treatment for her drug addiction.

There were attempts to avoid intervention from the juvenile court prior to the removal of Child. Services offered to Mother included public assistance programs such as Medicaid as well as food stamps, counseling, and parenting classes. A "safety plan" was created that called for Mother's participation in outpatient drug therapy three times per week until arrangements could be made for Mother to admit herself for inpatient treatment, but Mother failed to comply with the outpatient therapy. Mother tested positive on subsequent drug screenings December 27, 2001 and again on January 15, 2002. She was scheduled for inpatient treatment at the McCambridge Center in Columbia, to begin on February 4, 2002. However, Mother failed to keep her appointment at the center.

On February 5, 2002, a request for detention and petition were filed by Phelps County Chief Deputy Juvenile Officer, Don Nelson ("Juvenile Officer"), requesting the detention of Child pursuant to Section 211.031.1(1)(b), which alleges that Child was "in need of care and treatment because [she was] otherwise without proper care, custody or support." An order of detention was filed placing the child in the care and custody of DFS on that same date. Child was temporarily placed in foster care until suitable placement options could be investigated, and a guardian ad litem ("GAL") was appointed for her.

On February 13, 2002, Father filed a motion to add him as a party and a motion requesting a protective custody hearing. That hearing was held on February 14, 2002, and Father was brought in as a party. In addition to Father, those present at the protective custody hearing included Mother, maternal grandmother ("Grandmother"), Juvenile Officer, and GAL.

Grandfather also was present at the hearing, and moved to intervene, but his motion was denied until a legal determination as to Child's paternity was submitted. Father had filed a petition for determination of paternity, custody and child support in Boone County on January 7, 2002, in which he alleged that he "is probably the biological father of Child." However, at the time of the protective custody hearing, there had been no legal determination in the Boone County action.

Although paternity test results were admitted by GAL, the juvenile court informed Father that he could not be considered for custody of Child until he was legally declared Child's natural father. As Grandfather's rights were deemed derivative of Father's, the court also declined to consider Grandfather for custody of Child.

At the protective custody hearing, the court heard testimony from the parties and Ms. Johns. Ms. Johns testified that there had been ongoing efforts since Child's birth to get Mother into drug treatment facilities, but all such efforts had failed. She opined that due to Mother's living arrangements, it was in Child's best interest for DFS to take protective custody of her. Mother lived with Grandmother; Mother's sister also lived there, and she also was involved with drug use. In a docket entry filed February 14, 2002, the juvenile court found "that there was a need for continued protective custody and the child could not be returned safely home[,]" due to Mother's drug problem, which would require inpatient treatment.

On a finding that Grandmother was a possible custodian, the court ordered her to submit to drug testing. It also required that she enter into an agreement with DFS "that no other adult relative remain in the household overnight while the child is in [Grandmother's] custody." GAL requested a home study for Grandmother, and Juvenile Officer requested that the court order a home study for Father to facilitate placement of Child at the earliest possible time.

On March 6, 2002, another hearing was held "initially for trial setting," with the same parties present. A date for the adjudicatory hearing was set. Upon evidence presented by Father that he had been legally declared to be Child's father, the juvenile court formally recognized his paternity and allowed Grandfather to intervene as a party.

Physical custody of Child was transferred to Grandmother, conditioned on the court's requirement that neither of Grandmother's daughters was to live in the house with Child. Both parents consented to this transfer of custody. Grandfather filed a motion to dismiss for failure to state a claim, which the court reviewed and overruled. Grandfather then requested a change of judge, and Judge Haslag agreed to disqualify himself.

On March 11, 2002, Juvenile Officer filed the first amended petition. Judge Sheffield was assigned to the case on March 20, 2002. Juvenile Officer filed a motion to modify the court's previous order that stipulated Mother was not allowed to reside with Grandmother. The court granted the motion, finding it was in Child's best interest to allow Mother to also reside with Grandmother.

Father and Grandfather filed motions to modify the protective custody order on May 22, 2002. On June 4, 2002, Grandfather filed his first amended motion to modify the protective custody order and requested that Child be placed with Father or alternatively, with Grandfather "for periodic weekends of temporary custody."

On July 22, 2002, the court held the "adjudication" hearing and took up the motions to dismiss and modify the protective custody order. Grandfather moved for dismissal, asserting that the juvenile court did not have jurisdiction, as the first amended petition did not state specifically what actions by Father constituted abuse or neglect. The juvenile court overruled the motions. Grandfather also submitted a request for findings of fact and conclusions of law. Upon Mother's request that the juvenile court continue its jurisdiction over Child and retain placement of Child with Grandmother, the court limited the focus of the evidence and testimony to issues regarding Father only.

Ms. Johns testified regarding her investigation on behalf of DFS. Mother had stated to Ms. Johns that both she and Father had abused drugs during and after her pregnancy. Ms. Johns obtained information from the Rolla police department revealing that Father had a record of "many arrests in the past due to drug related issues and drug paraphernalia," and was still facing other criminal charges. A succession of "hotline calls" to DFS instigated a family assessment into the situation between Mother and Father. One hotline call in December 2001, involved an altercation between Mother and Father at a gas station convenience store where Mother reported that Father had assaulted her sister and tried to take Child.

Darla Light, a DFS caseworker, testified that Father had failed in several areas to cooperate with DFS. According to Ms. Light, he failed to keep scheduled appointments with DFS and refused to submit to random drug testing, psychological evaluation, and individual counseling. She fur-

ther stated that in regard to a home study conducted by Boone County DFS of the home shared by Father and Grandfather, inconsistencies were found in Father's statements regarding his criminal history, background, and drug abuse. Further, Father provided no regular support for the child.

DFS records indicate that it was determined that both parents needed to address domestic violence issues and appropriate parenting issues, submit to psychological evaluations and counseling, and agree to random drug testing. A "Family Written Service Plan" was proposed for each parent, establishing objectives and goals to aid in efforts to reunite the parents with Child. Both Father and Mother were advised of certain consequences should either fail to cooperate with DFS. Such consequences included that "[t]his worker and the Division of Family Services will not recommend returning custody of [Child] to either parent until significant changes are achieved. If the parent refuses to work with the agency, the agency reserves the right to keep the child out of the home and seek termination of parental rights."

Father refused to sign his service agreement and ultimately ceased visiting Child at his scheduled visitation times. He explained that he no longer visited Child because he did not like "following supervised guidelines which were unnecessary" and did not like feeling as if he was in a "jail cell" while he visited his child. He stated that he decided he would wait to visit until after his court date.

The court ordered that a home study filed on May 2, 2002, was to be appended to the record before the court. That information included a Missouri State Highway Patrol Criminal History Record revealing that Father had been charged with and entered a plea of guilty to a felony charge of stealing in 1998. In addition, Father had been charged in 2000 with misdemean-

or assault in the third degree, to which he also entered a plea of guilty; and in 2001, he was charged with assault in the third degree.

There was additional testimony regarding Father's violent tendencies and two instances where Grandfather and Mother separately filed for ex parte orders against Father, with Grandfather alleging in his order filed May 31, 2002, that Father had threatened him with physical violence at least 12 times in the preceding year.

Mother testified that between February and September 2001, when Father knew Mother was pregnant, he provided her with drugs, including Xanax, marijuana, Oxycontin, Percocet, Klonopin, and LSD. She further stated that while hospitalized in August of 2001, Father and Grandfather visited her and Grandfather provided her and Father with a cigarette containing a mixture of both marijuana and tobacco for them to smoke outside the hospital. Mother also related an incident between her and Father where he pushed her "halfway down the stairs" while she was pregnant. She said they were arguing and Father was on cocaine. When she attempted to call Grandmother to pick her up, Father hung up the phone.

The juvenile court entered its judgment, which included findings of fact and conclusions of law, on August 19, 2002. On issues involving Father's fitness to take custody of Child, the court concluded that the presumption that Father "is an appropriate custodian has been rebutted by clear, cogent and convincing evidence that [Father] is unfit, unable or unwilling to be the custodian of his child." The judgment ordered "that the child remain in the legal and physical custody of the Division of Family Services," with placement of Child to continue with Grandmother. The record indicated that both Mother and Father consented to the temporary placement of Child with Grandmother.

## PRELIMINARY ISSUES OF APPEALABILITY

This appeal presents a rather unique situation in that Grandfather raises some points on appeal on his own behalf, but others on behalf of Child, his granddaughter. Before addressing the appropriateness of such an appeal, we feel it is important to note that, based on our review of the record, the juvenile court's August 19, 2002 judgment of disposition was supported by clear, cogent, and convincing evidence in its findings and conclusions related to continuing jurisdiction over Child because she is without proper care, custody, or support; determining both Mother and Father are unfit, unable, or unwilling to be Child's custodian; and concluding it was in Child's best interest for the court to retain its jurisdiction over her. *See In re M.R.F.*, 907 S.W.2d 787, 789 (Mo.App.1995).

■ Thus, to the extent that any of the points raised by Grandfather allege error by the juvenile court regarding determinations related to Father or contain arguments that Father should have been allowed custody of Child, such contentions fail because the judgment was backed by substantial evidence and the evidence met the clear, cogent, and convincing standard on those issues. Further, based on evidence before the juvenile court that Grandfather provided drugs to both Mother and Father, to the extent that Grandfather is arguing that he should have been allowed custody, such arguments fail for the same reasons. The judgment rendered by the juvenile court was in the best interests of Child, and the court met its burden of proceeding in such a manner that its paramount consideration was the welfare of the child. *Id.*

■ We return now to a discussion of the overall appropriateness of Grandfather's appeal. Appeals under Chapter 211 "shall be allowed as provided by statute." Rule 120.01(a). Under § 211.261.1, RSMo 2000, "[a]n appeal shall be allowed to the child from any final judgment, order or decree made under the provisions of this chapter and may be taken on the part of the child by its parents, guardian, legal custodian, spouse, relative or next friend." A grandparent is considered a relative under § 211.261. *In re J.L.H.*, 647 S.W.2d 852, 856 (Mo.App.1983). Further, Grandfather stated in his notice of appeal that he has brought this appeal on behalf of Child. Thus, we find that Grandfather is entitled by statute to bring this appeal on behalf of Child. *See id.*

■ However, although Grandfather has a statutory right to bring an appeal on behalf of his granddaughter, § 211.261, RSMo 2000, only allows a parent to bring an appeal on his or her own behalf. According to § 211.261.1, RSMo 2000, "[a]n appeal shall be allowed to a parent from any final judgment, order or decree made under the provision of this chapter which adversely affects him [or her]." The right to appeal in Missouri is statutory and we find no similar provision that allows those, other than parents, who are specifically listed in § 211.261.1, RSMo 2000, to bring an appeal on their own behalf. *See In Interest of J.A.D.*, 905 S.W.2d 101, 104 (Mo.App.1995).

Therefore, we write to clarify that Grandfather, under § 211.261, RSMo 2000, may only bring an appeal on his granddaughter's behalf and not his own.

The judgment is affirmed.

BARNEY, P.J., and GARRISON, J., concur.